JOHN D. CASEY, Admr., Plaintiff in Error, *vs.* WILLIAM P. ADAMS, Defendant in Error.

*Opinion filed April 23, 1908—Rehearing denied June 4, 1908.*

1. NEGLIGENCE—*when policeman cannot recover for injury received in defendant's building.* A policeman who is employed by an express company to guard its wagon from strikers, and who accompanies the wagon when it is sent to a building at the request of a tenant, does not go to the building at any express or implied invitation of the owner thereof, and if he enters the building for reasons unconnected with his duties he is a mere trespasser, and cannot recover from the owner of the building for injuries received in falling down an elevator shaft.

2. SAME—*when a policeman is a mere licensee upon premises.* A policeman who enters a building in order that he may better perform his duties as a police officer, but without any invitation, express or implied, from the owner of the building, is a mere licensee, and the owner of the building owes him no duty except to refrain from inflicting willful or wanton injury upon him. (*Gibson* v. *Leonard,* 143 Ill. 182, followed.)

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on writ of error to the. Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

On July 21, 1905, John D. Casey, administrator of the estate of Patrick E. Blackwell, plaintiff in error, brought suit in the superior court of Cook county against William P. Adams, defendant in error, to recover damages for the death of plaintiff in error's intestate, alleged to have been caused through the negligence of defendant in error. To the declaration the defendant interposed the general issue, and upon a trial, at the close of the evidence for plaintiff, under direction of the court, the jury returned a verdict of not guilty. Motions for a new trial and in arrest of judgment were overruled and judgment was entered by the court against plaintiff in error. An appeal was taken to the Appellate Court for the First District. There the cause was

assigned to the branch court, where the judgment of the superior court was affirmed. Plaintiff in error was granted a certificate of importance and brings the record here for review.

The declaration alleges, in substance, that the defendant, on May 10, 1905, owned a certain large business building in the city of Chicago, different portions of which were then and there occupied by various firms and persons as tenants of defendant in carrying on their business, and that defendant had then and there in said building in his control a certain large, open freight elevator shaft extending from the upper floors of said building to the basement and immediately inside the wall of said building, which wall was next to and parallel to a certain alleyway; that in said elevator shaft he owned and controlled and operated a large freight elevator for the use of his said tenants and those transacting business with them; that he then and there had and maintained, a short distance above the ground floor of said building, a large doorway or opening in the wall about five and one-half feet wide and six feet high, the bottom of which was about four feet from the surface of said alleyway, and which doorway opened directly from said alleyway into said elevator shaft, with only the thickness of said wall between the two; that through said doorway the said tenants, their employees and those with whom they transacted business were accustomed to pass, with the knowledge and consent of defendant, in taking and delivering goods for said tenants from said elevator to wagons standing in said alleyway and from said wagons to said elevator, and that by reason of the premises it was then and there the duty of defendant to have exercised ordinary care toward keeping and maintaining said doorway in a reasonably safe condition for such use by such persons, and for the reasons, among other things, that there was no light in said elevator shaft and but poor light in said alleyway, and that from the situation of said elevator shaft, doorway and alleyway

a person approaching and about to enter said doorway from a wagon in said alleyway would not ordinarily expect to find, and might through no want of ordinary care on his part fail to discover, the existence of said elevator shaft immediately inside of said doorway, all of which defendant knew or by the exercise of ordinary care could have known; that the reasonable safety of such persons required, and it was then and there the duty of defendant to place and maintain, a chain or other sufficient barrier across said doorway or a sufficient warning or notice in said doorway to apprise such person or persons, in the event said elevator was away from said doorway, of the presence of said elevator shaft and to prevent them from falling into said shaft, but that defendant, in disregard and violation of his duty, negligently failed to place and maintain such chain or protection across said doorway or a sufficient warning or notice in said doorway for the purpose aforesaid.

The declaration further alleges that an express wagon belonging to Wells, Fargo & Co., in charge of one of its servants, at the request of one of the tenants of the building who had the right to use said elevator, shaft and doorway, as aforesaid, called at said doorway in said alleyway to collect and receive certain goods which said tenant was to convey by said elevator from one of the upper floors of said building which it occupied down to the doorway and there deliver to said express company for transportation; that said wagon was backed by the driver thereof up to and against said wall immediately in front of said doorway; that said elevator was then and there away from said doorway, and that by reason of the negligence and failure on the part of defendant, as aforesaid, said Patrick E. Blackwell, who was then a police officer of the city of Chicago, accompanying said wagon and riding therein for the purpose of protecting the property of said express company and its employees, at its request and under the orders of his superior officer, while he was in the performance of his duty

and in the exercise of due care and caution for his own safety, then and there stepped from said wagon to the bottom sill of said doorway and accidentally fell down said elevator shaft into the basement of said building, thereby receiving injuries which resulted in his death.

Defendant in error owned the building mentioned in the declaration. It was seven stories high, and extended from Wabash avenue one hundred and seventy feet west along Congress street to an alley running north and south, fifteen or twenty feet in width. On the opposite side of the alley and immediately west is the Siegel-Cooper building, eight stories high. In front of these buildings, on Congress street, twenty-six feet above the ground, is the structure of an elevated road. The structure is but seven feet from the street line. The doorway to the elevator shaft is forty-one feet from that line. That structure and the building on the opposite side of the alley to some extent prevented light entering the elevator shaft through the doorway. There was no light in the shaft except that which came in through the opening in the outer wall, which was twenty-seven inches in thickness, and when the doors were opened no chain or barrier of any kind was placed across the opening. The shaft and the doorway were located and the elevator was used as averred by the declaration.

The accident occurred on May 10, 1905, during a teamsters' strike in the city of Chicago. To protect the property carried by various common carriers in that city, at their request a large force of police officers was detailed, among whom was the deceased. Sometime during the day a servant of one of the tenants in the building engaged Wells, Fargo & Co., an express company, to transport certain goods of the tenant from the building. When the express wagon, which was in charge of one of the servants of the express company, came to the building for the merchandise, it was driven into the alleyway and backed up to the opening leading into the elevator shaft. The deceased came with the

wagon, under orders from his superior officer to ride on and remain with this wagon to protect the property and employees of said company and the goods carried by the wagon from the strikers. When the wagon arrived the elevator was some distance above the opening, coming down, loaded with the goods to be taken away. It was a dark, cloudy day and the wagon was a large covered wagon, open only in front and rear. Immediately after it stopped, the deceased, who was riding inside of the wagon, was seen to step sideways and a little backwards upon the tail-board of the wagon, which was dropped and projected out from the rear end of the bottom of the wagon bed. Continuing in the same direction and moving the same way he then apparently stepped upon the bottom sill of the doorway or opening and disappeared into the elevator shaft below. The injuries received from the fall resulted in his death a short time afterward. He left surviving him a wife and two children.

It is contended by the plaintiff in error (1) the Branch Appellate Court erred in holding that the deceased was a mere licensee or trespasser upon the premises of defendant at the time of his injury; (2) the said court erred in holding that the deceased was guilty of negligence which contributed to his injury and death.

JAMES C. McSHANE, for plaintiff in error.

FRANK M. COX, and J. F. DAMMANN, JR., for defendant in error.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Defendant in error maintained an elevator shaft and operated a freight elevator therein for the use of his tenants and employees in receiving and discharging merchandise. The deceased was a police officer directed by his superior to ride on the wagon of the express company for

the purpose of protecting the express company's horses, its employees, and the wagon and merchandise therein, from striking teamsters. When the employee of the express company in charge of this particular wagon backed the wagon up to the doorway opening into the elevator shaft the deceased stepped into the opening, which from the outside seemed dark, fell down the shaft and received a fatal injury. The wagon and the employees of the express company came there at the request of a tenant to receive goods. The deceased had no connection whatever with the business of the tenant. His sole duty was to act as a guard for and on behalf of the express company, to protect its employees and property and the property of others while in its custody. The tenant had no business to do with the deceased and the deceased did not have occasion to see or communicate with any person within the building. He was not allured, induced or invited by the defendant in error or his tenant to enter the building. It must be inferred from the evidence that he entered the building for one or the other of two purposes: Either (1) as a matter of convenience, for the purpose of getting out of the way of those who were about to place in the wagon packages which the tenant desired to ship; or (2) for the purpose of better protecting the employees of the express company while taking possession of the goods that were to be shipped, and for the purpose of better protecting the goods themselves as soon as they passed into the possession of the express company. If he went into the building for the first purpose he was a mere trespasser, and defendant in error owed him no more duty than would the owner of the building across the alley if the deceased had elected to step into that building to wait while the goods were being loaded. If, on the other hand, he stepped into the building that he might better perform his duties as police officer he was licensed so to do by the law itself, even in the absence of permission given by the owner of the building. (Cooley on Torts, 313; *Woodruff* v. *Bowen*, 136

Ind. 431.) In such case, however, he would. be a mere licensee, to whom defendant in'error would owe no duty except the duty to refrain from inflicting a willful or wanton injury upon him. It was so held by this court in *Gibson v. Leonard,* 143 Ill. 182, in reference to a member of a fire insurance patrol who entered a building for the purpose of protecting property therein from fire, and who, while using an elevator in the building, was injured by the falling of the counter-weight, which, according to his contention, was not properly secured. The rule announced in that case must be held applicable to the policeman who enters without any express or implied invitation from the owner.

It is unnecessary to consider the question of contributory negligence.

The judgment of the Branch Appellate Court will be affirmed.                              *Judgment affirmed.*