### KITHCART v. FELDMAN et al.

No. 10822—Opinion Filed May 15, 1923.

(Syllabus.)

**Negligence—Licensees—Duty of Landlord to Policeman on Premises.**

Where a policeman, in the discharge of his duty, enters upon the premises of another, but without any express or implied invitation of the owner of the premises, he is a mere licensee, and such owner owes him no duty except to refrain from inflicting willful or wanton injury upon him.

Error from District Court, Tulsa County; Redmond S. Cole, Judge.

Action by W. T. Kithcart against Robert Feldman and wife, Max Feldman and wife, and Edna Crumley for damages for personal injuries. Judgment for defendants, and plaintiff appeals. Affirmed.

Robinett & Ford, for plaintiff in error.

Owen, Yancy & Fist, for defendants in error.

NICHOLSON, J. This action was instituted by the plaintiff in error against the defendants in error to recover damages in the sum of $50,000, for injuries sustained by being shot by a negro porter in the employ of the defendants.

The plaintiff in his petition alleged, in substance, that the defendants were the owners of and engaged in operating the Charlton Hotel in the city of Tulsa, and had in their employ one Walter Rogers, a negro, who acted as porter until midnight and was manager of said hotel from midnight until 7 o'clock in the morning; that Rogers was a man vicious in his propensities, quarrelsome in his disposition, criminal in his instincts and tendencies, and was possessed of a malevolent disposition to and toward the police department of the city of Tulsa, and the various members thereof, and especially those who patrolled East First street in front of said hotel; that he used violent and insulting language toward the police department and the various members comprising the same, and had threatened the lives of several members thereof; that he was in the habit of carrying brass knuckles and pistols and other dangerous and deadly weapons; that Rogers had been engaged in the business of selling whisky, and had also been engaged in soliciting various persons as men patrons for lewd women and guests who lived at said hotel, in violation of the city ordinances; that he had been arrested and convicted for said offenses by both the city and the county authorities on numerous occasions (a list of such convictions being attached to the petition); that said Rogers was an enemy of the police department and was a dangerous person to be in charge of and intrusted with the operation and management of said hotel; that the facts alleged were known to the defendants, and that the defendants had been notified thereof by the mayor, the police judge, and the chief of police of the city of Tulsa, and had been advised that they had better discharge said Rogers from their employ, and not permit him to be and remain at said hotel.

It was further alleged that on the 22nd day of January, 1910, the plaintiff was in the employ of the city of Tulsa as a policeman, and had been detailed to patrol East First street in said city; that at about the hour of 2:30 a. m. of said day, while discharging his duties as such officer, he observed said Walter Rogers standing on the sidewalk in front of said hotel soliciting numerous men who walked along the sidewalk to become guests of said hotel and to buy whisky and cohabit with the lewd char-

acters in said hotel; that the acts of said Rogers, in so doing were in open and direct violation of the city ordinance of the city of Tulsa; that plaintiff called to said Rogers and attempted to arrest him for said offense; that thereupon Rogers ran into said hotel, and the plaintiff followed him into said hotel for the purpose of arresting him for the crime he had committed; that thereupon said Walter Rogers grabbed and took a pistol from the scabbard of the plaintiff and fired four shots into the body of the plaintiff, thereby crippling the plaintiff for life; that such injuries were not caused by any fault or negligence on the part of the plaintiff or because of any failure of his to exercise proper and ordinary care for his own safety and protection, but were caused wholly, directly, and approximately by and on account of the negligence of the defendants and each of them, their agents, servants, and employes, and that the acts of said defendants in employing the said Walter Rogers and permitting him to work and be and remain at and in charge of said hotel were in violation of ordinances 1762 and 1780 of the city of Tulsa.

The trial court sustained a general demurrer to the plaintiff's petition, and it is this action of which complaint is made.

The plaintiff in error submits two questions for determination: First, Does a property owner, under the city ordinances of the city of Tulsa, owe a policeman entering the premises in the discharge of his duties any duty other than not to wantonly or willfully injure him? And second, Does a property owner, under the laws of this state, in the absence of the city ordinances referred to in plaintiff's petition, owe a policeman entering the premises in the discharge of his duties any duty other than not to wantonly or willfully inflict injury upon him?

Section 976 of the city ordinance makes it unlawful to harbor criminals and section 977 declares it to be unlawful and a misdemeanor for any manager, proprietor, or any other person in charge, to willfully or knowingly conduct, maintain, or operate any lodging house as a rendezvous or place of abode, or as temporary quarters where persons who are constant violators of the city ordinances or laws of the land, whereby any act or acts are made criminal, may resort to engage in any such unlawful act or acts. Section 969 prohibits the obstruction of exits in any lodging house, or the keeping of any means of ingress or egress in an unreasonably unsafe condition, or obstructed in any manner, so that persons lodging therein may not have free avenues of exit therefrom, or so that members of the fire department will be obstructed or delayed in gaining free access in case of fire. It is not alleged that the defendants violated either of these sections of the ordinance in any manner other than by employing Walter Rogers.

By section 974 of said ordinance it is made a misdemeanor for any person to stand or remain on the street or at any other thoroughfare of said city for the purpose of soliciting guests or persons to patronize any lodging house, and it is this provision of the ordinance which plaintiff alleges Walter Rogers was violating. It seems that plaintiff predicated his cause upon the theory that the employment of a man vicious in his propensities, quarrelsome in his disposition, criminal in his instincts and tendencies, and possessed of a malevolent disposition toward the police department rendered the premises where he was employed unsafe within the purview of the ordinance of the city of Tulsa, and that the employment of such person rendered the defendants liable under the provisions of section 998, Rev. Laws 1910, which reads:

"Everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself."

We cannot agree with this theory. It is alleged that the negro was on the sidewalk soliciting patronage for the lodging house. When the plaintiff discovered him thus engaged, he called to him, and attempted to arrest him; that thereupon the negro went into the lodging house and was followed by the plaintiff. It was then, according to plaintiff's theory, that the house became unsafe, and a menace to the plaintiff. Not because of any defect therein, or of any failure on the part of the defendants to keep the premises in repair, or in a safe condition, but solely because of the presence of Rogers therein. The premises were perfectly safe before the negro entered, and were again safe after he had been removed. It occurs to us that it was the negro and not the premises that proved to be dangerous. In fact, it was only to the policemen that the negro was a menace. Guests of the lodging house and the public in general were in no danger from him.

In attempting to arrest Rogers the plaintiff was in the discharge of his duties as a policeman. He was not invited into the lodging house by the defendants, but, at most, he was a mere licensee, and as such the defendants owed him no duty except to refrain from inflicting willful and wanton injuries upon him. Midland Valley R. Co. v. Littlejohn, 44 Okla. 8, 143 Pac. 1; Casey v. Adams, 234 Ill. 350, 17 L. R. A. (N. S.) 776, 123 Am. St. Rep. 105, 84 N. E. 933; Berry v. Boston Elev. R. Co., 188 Mass. 536, 74 N. E. 933; Creeden v. Boston & M. R. Co., 193 Mass. 280, 79 N E. 344, 9 Ann. Cas. 1121; Brennan v. Keene (Mass.) 13 A. L. R. 629; Burroughs Adding Mach. Co. v. Fryar, 132 Tenn. 612, L. R. A. 1916 B. 791, 179 S. W. 127, 11 N. C. C. A. 700; Thrift v. Vandalia R. Co., 145 Ill. App. 414.

Our attention has not been directed to any ordinance or statute which imposes any greater duty upon the defendants. It is not charged that the defendants willfully or wantonly injured the plaintiff, neither is it alleged that the injury complained of was occasioned by want of ordinary care or skill in the management of the property or persons of the defendants. The defendants did not injure the plaintiff, neither was the injury occasioned by the want of ordinary care in the management of their property. The negro was not the property of the defendants.

It is not contended that Rogers was acting within the scope of his authority when he shot the plaintiff. The defendants were not liable under the provisions of section 998, Rev. Laws 1910. The petition failed to state facts sufficient to constitute a cause of action against the defendants, and the judgment of the trial court in sustaining the demurrer thereto is affirmed.

KANE, KENNAMER, COCHRAN, and MASON, JJ., concur. JOHNSON, C. J., and McNEILL and BRANSON, JJ., dissent.